<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SERGIO D. FIORARANCIO, | : | |
| *on behalf of himself and all others similarly* | : | **Civil Action No. 21-14614 (SRC)** |
| *situated,* | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | |
| | : | |
| WELLCARE HEALTH PLANS, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**CHESLER**, District Judge

    This matter comes before the Court upon Defendant WellCare Health Plans, Inc.'s

("Defendant") motion to dismiss Plaintiff Sergio D. Fiorarancio's ("Plaintiff") Complaint for

failure to state a claim upon which relief can be granted. Plaintiff has opposed Defendant's

motion. For the reasons that follow, the Court will deny Defendant's motion to dismiss in part

and grant Defendant's motion in part.

**I.    BACKGROUND[1]**

    Plaintiff alleges he received twenty phone calls, including eighteen voice mails, and two

text messages from Defendant in violation of the Telephone Consumer Protection Act

("TCPA"), 47 U.S.C. § 227. (Compl. ¶¶ 25-48). In general, the TCPA regulates the use of

---

[1] The Background section sets forth facts alleged in Plaintiff's Complaint [ECF 1]. The facts in the Complaint are taken as true for purposes of this motion to dismiss only. <u>See</u> <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994) ("[I]n considering a motion to dismiss for failure to state a claim under Rule 12(b)(6). . . the district court [is] required to accept as true all allegations in the complaint. . . .").

telemarketing. In re Dish Network, LLC, 28 FCC Rcd. 6574, 6574 (2013). It was enacted in 1991 in response to the proliferation of nuisance calls to people's homes. Id. at 6575. Congress gave the Federal Communications Commission ("FCC") the authority to promulgate rules and regulations implementing the TCPA. 47 U.S.C. § 227(b)(2).

The communications at issue here occurred between February 2019 and December 2019. (Compl. ¶¶ 25-48). The calls, voicemails, and text messages were not addressed to Plaintiff but rather to someone Plaintiff refers to as F.E. or F.H. (Compl. ¶¶ 25-48). Plaintiff avers that he did not have any prior dealings with Defendant nor did he consent to receive the communications from Defendant. (Compl. ¶ 49).

The Complaint details the contents of the communications. Many of the calls referenced Defendant's "Healthy Living Program," (Compl. ¶¶ 25, 27, 28, 29, 30, 47, 48), a free service Defendant offers to those who are at risk of experiencing a drug therapy problem, (Def. Br. at 3). Other calls referred to an "educational health program," (Compl. ¶¶ 31, 32, 33), an "in home health assessment visit," (Compl. ¶ 37), and a "service that's part of [the WellCare] membership," (Compl. ¶ 36). Still others referenced "important information." (Compl. ¶¶ 34, 35, 41, 42). One of the calls invited Plaintiff to make an appointment with his dentist and referenced his "coverage under the dental plan." (Compl. ¶ 39). The two text messages both reminded Plaintiff to schedule a flu shot. (Compl. ¶¶ 43-46). Finally, Plaintiff contends that four of the phone calls used a prerecorded message. (Compl. ¶¶ 39, 40, 41, 42).

Plaintiff alleges the communications from Defendant violated the TCPA in two ways. First, Plaintiff alleges Defendant ran afoul of the regulations implementing the TCPA, particularly 47 C.F.R. § 64.1200(c)(2), by calling him more than once in a twelve-month period after Plaintiff had placed his name on the National Do Not Call Registry ("NDNC") ("the NDNC

2

Claim").[2] (Compl. ¶¶ 2, 80-88). Second, Plaintiff argues Defendant called him using a

prerecorded voice and without his express consent in violation of 47 U.S.C. § 227(b)(1)(A) ("the

Prerecorded Voice Claim"). (Compl. ¶¶ 1, 71-79). Plaintiff makes these allegations on behalf of

himself and two separate classes that mirror the two distinct claims.[3] (Compl. ¶¶ 59-60).

## II.   DISCUSSION

### A.  Legal Standard

Defendant seeks dismissal of Plaintiff's Complaint for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(6). A complaint must contain "a short and plain statement

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid

dismissal under Rule 12(b)(6), the Supreme Court has explained that the complaint must "state a

claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007). A complaint will meet this plausibility standard "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the complaint need not

demonstrate that a defendant is probably liable for the wrongdoing to meet the requisite pleading

standard, allegations that give rise to the mere possibility of unlawful conduct are insufficient to

withstand a motion to dismiss. Id.; Twombly, 550 U.S. at 557. Further, a complaint need not

include highly "detailed factual allegations," but must include more than mere "labels and

conclusions." Twombly, 550 U.S. at 555. Moreover, "the tenet that a court must accept as true all

---

[2] The NDNC is a list of telephone subscribers who have indicated that they do not wish to receive calls from commercial telemarketers. Mainstream Mktg. Servs., Inc. v. FTC, 358 F.3d 1228, 1234 (10th Cir. 2004). The TCPA creates a private right of action for persons "who ha[ve] received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of" the regulations promulgated by the FCC, which includes the NDNC. 47 U.S.C. § 277(c)(5); see also Zelma v. Penn LLC, No. 19-cv-08725, 2020 WL 278763, at *6 (D.N.J. Jan. 17, 2020).

[3] As a technical matter, the Complaint includes four causes of action in total—one knowing or willful count and one strict liability count each for both the Prerecorded Voice Claim and the NDNC Claim. (See Compl. ¶¶ 71-88). The TCPA allows courts to award treble damages for knowing or willful violations. 47 U.S.C. § 227(b)(3).

of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. Finally, in evaluating a Rule 12(b)(6) motion, a court "must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which the court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

The Court will separately evaluate the two distinct claims in Plaintiff's Complaint—the NDNC Claim and the Prerecorded Voice Claim—under the plausibility standard.

**B.  The NDNC Claim**

Plaintiff's Complaint contains facts to plausibly state a claim that Defendant violated the TCPA by calling Plaintiff after he had put his name on the NDNC. The regulations implementing the TCPA prohibit initiating a "telephone solicitation" to any "telephone subscriber who has registered his or her telephone number on the national-do-not-call registry of persons who do not wish to receive telephone solicitations." 47 C.F.R. § 64.1200(c)(2). Plaintiff alleges that he registered his name on the NDNC in January 2007, well before February 2019 when the calls in question began. (Compl. ¶¶ 24-25).

Defendant, however, argues that the calls did not violate the TCPA because they were not "telephone solicitations" as defined by the statute and the regulations. Under the TCPA, a "telephone solicitation" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person. . . ." 47 U.S.C. § 227(a)(4); see also 47 C.F.R. 64.1200(f)(15). Defendant contends that "none of the calls mentioned or encouraged buying, renting, or investing in anything" but rather "sought to provide information, either about health care or

about benefits under the WellCare health insurance plan." (Def. Br. at 7). As such, for Defendant, the calls were not subject to the TCPA's prohibition on solicitations.[4]

On the other hand, Plaintiff argues that Defendant's calls were solicitations because, even if they did not explicitly propose a commercial transaction, they were a "pretext" to a commercial transaction. (Pl. Br. at 14-15). Indeed, Plaintiff cites numerous cases in which other courts have held that communications that are purely informational on their face may still violate the TCPA because they could ultimately be used to advertise other products or services at cost. See, e.g., Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharms., Inc., 847 F.3d 92 (2d Cir. 2017) [hereinafter Boehringer]; Comprehensive Health Care Sys. of the Palm Beaches, Inc. v. M3 USA Corp., 232 F. Supp. 3d 1239 (S.D. Fla. 2017).

The Court finds Plaintiff's pretext argument persuasive. Defendant's calls consistently referenced free services such as the "Healthy Living Program," an "educational health program," an "in home health assessment visit," and a "free preventative care program." (Compl. ¶¶ 25, 27, 28, 29, 30, 31, 32, 33, 37, 47, 48). Although the TCPA does not explicitly include free services or programs in the definition of "telephone solicitations," "[w]e know from common experience. . .that 'free offers' often come with strings attached." Physicians Healthsource, Inc. v. Stryker Sales Corp., 65 F. Supp. 3d 482, 493 (W.D. Mich. 2014) [hereinafter Stryker Sales Corp.]. Here, for example, each of the messages Defendant left for Plaintiff included a number for Plaintiff to call in order to obtain more information about, or take advantage of, the offer for free services. (See, e.g., Compl. ¶¶ 25, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 39, 40, 41, 42, 47, 48). So, to

---

[4] Plaintiff's Complaint appears to allege that two text messages he received from Defendant violated the TCPA. (See Compl. ¶¶ 43-46) (mentioning the two text messages Defendant allegedly sent to Plaintiff). But, in his response to Defendant's motion to dismiss, Plaintiff concedes the text messages were not solicitations. (Pl. Br. at 13 n.4). Indeed, both of the text messages urged Plaintiff to schedule a flu shot. (Compl. ¶¶ 43-46). Other courts have held that flu-shot reminders are not solicitations under the TCPA. E.g., Savett v. Anthem, Inc., 18-cv-00274, 2019 WL 5696973, at *6 (N.D. Ohio Nov. 4, 2019). As such, the Court will grant Defendant's motion to dismiss as to any of Plaintiff's TCPA claims based on the two text messages.

claim the free services, Plaintiff would have had to speak to one of Defendant's agents where he might have been exposed to further solicitations or advertisements. See Mussat v. Enclarity, Inc., No. 16-cv-07643, 2018 WL 1156200, at *4 (N.D. Ill. Mar. 5, 2018) ("The point of the pretext doctrine is that a [message] that prompts a recipient to take action that necessarily exposes the recipient to advertising of the sender's goods or services falls within the ambit of the communications prohibited by the statute, even if that [message] does not itself provide information about the commercial availability or quality of the sender's goods or services."). Thus, while Defendant's messages may have been informational on their face, it is plausible that they were part of a larger marketing, or profit-seeking, scheme and, as such, fall within the TCPA's prohibition. See Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc., 106 F. Supp. 3d 9, 12–13 (D.D.C. 2015) (explaining that messages that promote a free good or service "are often part of an overall marketing campaign" (quoting In re Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 Junk Prevention Act of 2005, 21 FCC Rcd. 3787, 3814 (2006) [hereinafter 2006 Order]).

Defendant argues that the Complaint fails to give rise to the plausible inference that the calls were a pretext to a solicitation. (Def. Reply Br. at 4-7). Defendant explains that Plaintiff only alleges that he received an offer for free services. (Def. Reply Br. at 4-5). For Defendant, that is not enough. Rather, Plaintiff needed to include additional allegations indicating that the calls were intended to lead to a solicitation or advertisement. (Def Reply Br. at 5-7); see Boehringer, 847 F.3d at 96 ("Of course, as other courts have ruled, not every unsolicited fax promoting a free seminar satisfies the Rule."). Without any further allegations as to the purpose of the calls, Defendant argues, Plaintiff cannot survive the motion to dismiss. (Def Reply Br. at 2-3, 7).

Defendant's argument is unavailing because it ignores the broader context in which the calls were made. Part of that context is the sheer number of communications Defendant initiated with Plaintiff: twenty phone calls, including eighteen voice mails over the course of eleven months. (Compl. ¶¶ 25-48). This consistent pattern makes it more likely the calls were part of an overall marketing scheme—businesses typically do not promote free services in such an aggressive manner without any business purpose. See Boehringer, 847 F.3d at 95 (explaining that "[b]usinesses are always eager to promote their wares" and, therefore, typically do not provide free services or goods for no reason). And almost all of the calls pertained to services or programs related to Defendant's business, which makes it more likely the calls had a profitmaking purpose. Id. at 95–97 (holding that where a message "discuss[es] a subject that relates to the firm's products or services, there is a plausible conclusion that the [message] had the commercial purpose of promoting those products or services"). The Court can plausibly infer that the calls were pretext from the number of calls and their nexus to Defendant's business, both of which are evident from the Complaint. Therefore, Plaintiff need not specifically identify the exact purpose of the calls at this time.

This conclusion is sensible given the case is at the motion to dismiss stage. The purpose of Defendant's calls will only be clear after the parties (and the Court) learn more about why they were made. See Comprehensive Health Care Systems of the Palm Beaches, 232 F. Supp. 3d at 1242–43 (holding that "the ultimate question of whether [defendant's message] is merely a pretext for advertising its goods or services is a question of fact not suitable for disposition as a matter of law upon a motion to dismiss"). Indeed, "anyone who has received an invitation to a free breakfast or cocktail hour at a beach resort knows a lot more about whether the invitation was an advertisement for a time-share opportunity after actually attending the event." Stryker

Sales Corp., 65 F. Supp. 3d at 492. As such, it would be premature for the Court to find, as a matter of law, that the calls were not a pretext to solicitations, "[w]ithout the benefit of a more developed record." Eden Day Spa, Inc. v. Loskove, No. 14-cv-81340, 2015 WL 1649967, at *3 (S.D. Fla. Apr. 14, 2015).

Moreover, the Court's conclusion that Plaintiff has adequately alleged the messages were a pretext is supported by the Northern District of Ohio's recent decision in Less v. Quest Diagnostics Inc., 515 F. Supp. 3d 715, 717–18 (N.D. Ohio 2021). There, the defendant left prerecorded messages for the plaintiff that were almost identical in content to the ones at issue here. Id. at 717. For example, one of the messages referenced an "annual wellness visit," which the plaintiff was entitled to "at no copay." Id. The court denied the defendant's motion to dismiss, finding that more information was necessary to determine whether the messages offering free services were a pretext to a solicitation. Id. This information included: "[w]hat was the business strategy behind. . . the calls?" and "[h]ow did the calls generate revenue for [the health insurance provider]?" Id. Here, as in Less, the Court must gather more information about the calls.

Finally, Defendant contends the pretext argument is unavailable in the Third Circuit. (Def. Reply Br. at 4). But Defendant misinterprets the Third Circuit's decisions on the issue. It is true that the Third Circuit has never explicitly endorsed the pretext theory.[5] See Fischbein v. Olson Research Group, Inc., 959 F.3d 559, 564 n.4 (3d Cir. 2020) (overturning the dismissal of two TCPA cases but explicitly declining to endorse the pretext theory of liability). And in one unpublished decision the Third Circuit did express concern that the pretext theory would "extend [the] TCPA's prohibitions too far." Robert W. Mauthe, M.D., P.C. v. Nat'l Imaging Assocs.,

---

[5] Other courts of appeals have adopted the pretext theory of liability. See, e.g., Boehringer, 947 F.3d 92; Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc., 788 F.3d 218, 225 (6th Cir. 2015).

Inc., 767 F. App'x 246, 250 (3d Cir. 2019) [hereinafter NIA]. However, the Third Circuit has not explicitly rejected the pretext argument either. Instead, it recently described the issue as "a matter that is still open." Robert W. Mauthe, M.D., P.C. v. Optum Inc., 925 F.3d 129, 135 (3d Cir. 2019) [hereinafter Optum].

Additionally, the cases in which the Third Circuit has declined to apply the pretext theory are not analogous to the facts here. In Fishbein, the defendant sent two faxes asking the plaintiff to fill out a market research survey in exchange for money. 959 F.3d at 561. In Optum, the defendant sent the plaintiff a fax asking him to update his information in a database maintained by the defendant. 925 F.3d at 131. In NIA, the defendant sent the plaintiff a fax asking him to fill out a satisfaction survey. 767 F. App'x at 248. Importantly, none of these cases presented an offer for a free service or program by the defendant. And none of these cases involved more than two communications between the plaintiff and the defendant. Given the specific context presented here, Plaintiff's pretext argument is still available.[6]

In all then, the Court finds Plaintiff has plausibly alleged Defendant's calls were a pretext to a solicitation.

### C. The Prerecorded Voice Claim

Plaintiff also plausibly states a claim that WellCare violated the TCPA by calling him using a prerecorded voice. The TCPA prohibits the use of an artificial or recorded voice to call

---

[6] The Court also notes that the FCC has interpreted the TCPA regulations to embrace pretext liability. E.g., 2006 Order, 21 FCC Rcd. at 3814 (explaining that messages that promote free goods and services "serve as a pretext to advertise commercial products and services"). There is some confusion as to whether lower courts must accept the FCC's interpretation of the regulations as binding under the Hobbs Act. See, e.g., Levine Hat Co. v. Innate Intel., LLC, --- F. Supp. 3d. ----, 2021 WL 1889869, at *4 (E.D. Mo. May 11, 2021) ("Whether lower courts must adopt the 'pretext theory' has not been conclusively established."); Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC, No. 18-cv-01903, 2020 WL 2793954, at *12–*20 (E.D. Pa. May 29, 2020). Neither party raises the issue here, so the Court need not address it. However, at the very least, the FCC's interpretation is entitled to persuasive weight because it reflects "a body of experience and informed judgment which provides guidance for the judiciary." See Physicians Healthsource, Inc. v. Janssen Pharms., No. 12-cv-01232, 2013 WL 486207, at *3 (D.N.J. Feb. 6, 2013) (according persuasive weight to the FCC's interpretation of its regulations in determining whether faxes were advertisements under the TCPA).

any telephone number assigned to a cellular telephone service without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii); see also 47 C.F.R. § 64.1200(a)(1). To adequately state a claim, Plaintiff must plead that (1) Defendant called his cellular phone, (2) the call used a prerecorded or artificial voice, and (3) Defendant did not receive Plaintiff's express prior consent. See Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012). Plaintiff alleges four instances in which Defendant called his mobile phone using a prerecorded voice without his consent. (Compl. ¶¶ 39, 40, 41, 42, 49). Defendant only argues that the regulations interpreting the TCPA should be read to exempt the prerecorded calls at issue here from the consent requirement. (Def. Br. at 9-21). The Court first provides background on the TCPA regulations and the parties' positions, then interprets the regulations, and finally applies that interpretation to Plaintiff's Complaint.

### 1.   The TCPA Regulatory Framework and the Parties' Arguments

The parties' dispute centers on the interpretation of, and relationship between, two provisions of the TCPA regulations—47 C.F.R. § 64.1200(a)(1) and 47 C.F.R. § 64.1200(a)(2). Section (a)(1) generally repeats the statute's prohibition on prerecorded phone calls. It states no person or entity may "[e]xcept as provided in [Section (a)(2)], initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice." 47 C.F.R. 64.1200(a)(1). The Court will refer to this regulation as the "Prerecorded Message Prohibition" or simply "Section (a)(1)." Section (a)(2) prohibits any person or entity from

> [i]nitiat[ing], or caus[ing] to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial prerecorded voice, to any [cellular telephone number], other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization, or a call that

10

delivers a "health care message" made by, or on behalf, of a "covered entity" or
its "business associate," as those terms are defined in the HIPAA Privacy Rule. . .
.

47 C.F.R. 64.1200(a)(2). The Court will refer to this provision as the "Telemarketing Rule" or

"Section (a)(2)."

Defendant urges the Court to read Section (a)(2) as modifying the general prohibition in

Section (a)(1) to create, essentially, three different levels of consent requirements for prerecorded

phone calls. (Def. Br. at 12-16). The first level requires written, express consent for most calls

that use a prerecorded voice. (Def. Br. at 13). The second level requires prior express, but not

necessarily written, consent for calls made by tax-exempt organizations. (Def. Br. at 13). The

third level creates the Health Care Message Exemption which, for Defendant, wholly exempts all

calls that deliver a health care message on behalf of a covered entity from any sort of consent

requirement. (Def. Br. at 13). Defendant argues its calls to Plaintiff fall into the third category

and, therefore, no consent was required here. (Def. Br. at 21).

Plaintiff argues that Section (a)(1) and Section (a)(2) should be read as independent from

each other because they regulate different categories of prerecorded messages. (Pl. Br. at 4-10).

Plaintiff explains that, at first, the FCC prohibited all prerecorded phone calls unless they were

made for emergency purposes or with the called party's consent. (Pl. Br. at 4-5). This is the

prohibition codified in Section (a)(1). (Pl. Br. at 4-5). Then, in 2012, the FCC amended the

regulations to add a heightened, written consent requirement for certain types of prerecorded

calls—those that contain advertisements or constitute telemarketing. (Pl. Br. at 4-5). The

heightened requirements were codified in Section (a)(2). (Pl. Br. at 5). From this context,

Plaintiff argues that the language pertaining to health care messages in Section (a)(2) only

exempts from the heightened, written consent requirement calls that qualify as both (1) health

care messages and (2) advertisements or telemarketing. (Pl. Br. at 5-7). This interpretation

11

contradicts Defendant's position that Section (a)(2) exempts <u>any</u> health care message from both the heightened consent requirements of Section (a)(2) <u>and</u> the prior express consent requirement contained in Section (a)(1). (Pl. Br. at 7).

Both parties also address the FCC's interpretation of the regulations. Plaintiff points to two orders in which the FCC interpreted the regulations to exempt health care messages from the written consent requirement in Section (a)(2) but not the general consent requirement in Section (a)(1). (Pl. Br. at 11); <u>see</u> <u>Consumer & Governmental Affs. Bureau Seeks Comment on Petition for Expedited Declaratory Ruling & Exemption for Am. Ass'n of Healthcare Admin. Mgmt.</u>, 29 FCC Rcd. 15267, 15267 n.7 (2014) [hereinafter 2014 Order]; <u>In re Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991</u>, 30 FCC Rcd. 7961, 8030 n.481 (2015) [hereinafter 2015 Order]. Plaintiff argues that, if the Court were to find the regulations ambiguous, the FCC's interpretation warrants deference under <u>Auer v. Robbins</u>, 519 U.S. 452 (1997). (Pl. Br. at 10-12). Defendant, on the other hand, argues that, if the Court finds the regulations ambiguous, the FCC interpretation does not warrant deference because it is not a considered or authoritative guidance by the agency. (Def. Br. at 16-21).

## 2.   Interpreting the TCPA Regulations

With this background in mind, the Court interprets the regulations. The first step in this inquiry is to determine whether the regulations are genuinely ambiguous. <u>Kisor v. Wilkie</u>, 139 S. Ct. 2400, 2415 (2019); <u>United States v. Perez</u>, 5 F.4th 390, 394–95 (2021). In making this determination, a court must "exhaust all the 'traditional tools' of construction" by analyzing "the text, structure, history, and purpose of a regulation." <u>Kisor</u>, 139 S. Ct. at 2415 (quoting <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council</u>, 467 U.S. 837, 843 n.9 (1984)). Only if the regulation is ambiguous, may the court consider deferring to the agency's interpretation. <u>Id.</u> at 2415 ("First

and foremost, a court should not afford <u>Auer</u> deference unless the regulation is genuinely ambiguous."). Even then, however, the court may only defer to an agency's interpretation of its own regulations if the court concludes the interpretation is reasonable and "the character and context of the agency interpretation entitles it to controlling weight." <u>Id.</u> at 2416; <u>see also</u> <u>Perez</u>, 5 F.4th at 394–95.

Here, the Court finds the text, structure, history, and purpose of the TCPA regulations unambiguously support an interpretation that the regulations do not exempt all health care messages from the Prerecorded Message Prohibition. The analysis starts with the text. <u>In re Lord Abbett Mut. Funds Fee Litig.</u>, 553 F.3d 248, 254 (3d Cir. 2009) ("The first step in statutory construction is to consider the plain language of the statute.").[7] As to Section (a)(1), the key term is the qualifier at the beginning of the provision stating "[e]xcept as provided in Section (a)(2)." 47 C.F.R. 64.1200(a)(1). "Except" is defined as "not including" or "other than." Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/except (last visited Dec. 28, 2021). Moreover, the placement of this term at the beginning of the section indicates that the exclusion is intended to apply to everything after the term. <u>See</u> <u>Ellis v. Westinghouse Elec. Co.</u>, 11. F.4th 221, 235 (3d Cir. 2021). Therefore, Section (a)(1) can be reformulated as plainly stating the following: not including the prerecorded phone calls identified in Section (a)(2), all prerecorded phone calls are prohibited (unless they are made with the prior express consent of the called party or made for an emergency purpose). Given this plain meaning, the Court must analyze the text of Section (a)(2) to determine the subset of calls that are excepted from Section (a)(1).

---

[7] Throughout the following analysis, the Court draws on principles of statutory interpretation. <u>Bonkowski v. Oberg Indus.</u>, 787 F.3d 190, 199 (3d Cir. 2015) ("In interpreting a federal regulation, we look to well-established principles of statutory interpretation.").

The plain language of Section (a)(2) excepts only those calls that constitute telemarketing or advertising. The provision begins by making it unlawful to initiate any "telephone call that includes or introduces an advertisement or constitutes telemarketing." 47 C.F.R. § 64.1200(a)(2). It then contains its own requirements and exceptions, stating "other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call. . . delivers a health care message." 47 C.F.R. § 64.1200(a)(2) (internal quotation omitted). The Court draws two conclusions from this text. First, Section (a)(2) is clearly limited to telemarketing and advertising calls. Second, given this limitation, the requirements and exceptions in the latter half of Section (a)(2), including the Health Care Message Exemption, also only apply to telemarketing or advertising calls. See Zani v. Rite Aid Headquarters Corp., 246 F. Supp. 3d 835, 856 (S.D.N.Y. 2017) ("The use of the term 'other than' makes clear that [the Health Care Message Exemption] is an exception to the Telemarketing Rule."). Conversely, all prerecorded calls that are not telemarketing or advertising are still subject to Section (a)(1)'s requirements.[8]

The Court's interpretation contradicts Defendant's argument that the regulations should be interpreted to exempt all health care messages from the Prerecorded Message Prohibition. Defendant agrees that the qualifier in Section (a)(1) "[e]xcept as provided in [Section (a)(2)]," subjects the Prerecorded Message Prohibition to the exceptions enumerated in Section (a)(2). (Def. Reply Br. at 11-12). However, Defendant argues, Section (a)(2)'s language plainly exempts "health care messages" from any consent requirement, whether that requirement is found in Section (a)(1) or Section (a)(2). (Def Br. at 12-14). But Defendant's argument ignores

---

[8] The Court's reading of the regulations here assumes that a prerecorded phone call can be classified as both a health care message and a telemarketing call at the same time. As discussed below, other courts have agreed with this assumption. Zani v. Rite Aid Headquarters Corp., 246 F. Supp. 3d 835, 856–57 (S.D.N.Y 2017); Jackson v. Safeway, Inc., No. 15-cv-04419, 2016 WL 5907917, at *9 (N.D. Cal. Oct. 11, 2016).

the limiting language at the beginning of Section (a)(2), which clearly indicates that the provision only applies to telemarketing or advertising calls. In light of this language, for Defendant's argument to hold weight, the Court would have to conclude that the FCC put an exemption governing all health care messages—no matter if they are telemarketing or not—in a section of the regulations that pertains only to telemarking calls. But that conclusion belies any common sense reading of the regulations.[9]

Two other cases interpreting the TCPA regulations are instructive on this point. In both Zani v. Rite Aid Headquarters Corp., 246 F. Supp. 3d 835 (S.D.N.Y. 2017) and Jackson v. Safeway, Inc., No. 15-cv-04419, 2016 WL 5907917 (N.D. Cal. Oct. 11, 2016), the plaintiffs argued that a prerecorded phone call could not be classified as both a health care message and a telemarketing call. Zani, 246 F. Supp. 3d at 856; Jackson, No. 15-cv-04419, 2016 WL 5907917, at *9. Both courts rejected that argument, relying on the distinction between the consent required for telemarketing calls in Section (a)(2) and the consent required for non-telemarketing calls in Section (a)(1). Zani, 246 F. Supp. 3d at 856–57; Jackson, No. 15-cv-04419, 2016 WL 5907917, at *9. The Jackson court explained "it would have been odd" for the FCC to create an exception to Section (a)(2)'s consent requirements "only for calls that contain no advertising or telemarketing, given that [Section (a)(2)] itself only applies to [advertising or telemarketing calls]." No. 15-cv-04419, 2016 WL 5907917, at *9 (internal quotation omitted) (emphasis in original). Likewise, here, it would have been odd for the FCC to put an exception that applies to

---

[9] Defendant contends that the Court's interpretation renders the qualifying language in Section (a)(1) "[e]xcept as provided in Section (a)(2)" superfluous. (Def. Reply Br. at 12-13). That is not true. A subset of prerecorded calls is still excepted from the requirements of Section (a)(1) under the Court's interpretation of the regulations. That subset is telemarketing and advertising calls rather than, as Defendant argues, all healthcare messages. Therefore, the term "except" in Section (a)(1) still has meaning but it is just referring to a different category of calls than it would under Defendant's interpretation.

both telemarketing and non-telemarketing health care messages in Section (a)(2), a portion of the regulations that deals only with telemarketing calls.

Defendant argues that the <u>Zani</u> and <u>Jackson</u> opinions support its argument because both courts indicated, in dicta, that the plain language of Section (a)(2) might be read to exempt all health care messages from the Prerecorded Message Prohibition. (Def. Br. at 14). For example, in <u>Zani</u>, the court stated that "the most natural reading" of the regulations "might suggest that [health care messages] to cellular phones are exempt from either consent requirement under the TCPA." 246 F. Supp. 3d at 845; <u>see also</u> <u>Jackson</u>, No. 15-cv-04419, 2016 WL 5907917, at *7 n.10 (commenting that "under the plain language" of the regulations it appears that health care messages are "not subject <u>any</u> consent requirement, written or otherwise"(emphasis in original)). However, the <u>Zani</u> court went on to thoroughly analyze the Health Care Message Exemption and concluded that it was an exception to the Telemarketing Rule rather than the Prerecorded Message Prohibition. <u>Id.</u> at 856. The <u>Jackson</u> court came to a similar conclusion. <u>Jackson</u>, No. 15-cv-04419, 2016 WL 5907917, at *9. This analysis is consistent with the Court's interpretation here and directly contradicts the statement that the regulations "might" exempt all health care messages from any consent requirement. That is, the Health Care Message Exemption cannot sweep that broadly if it is only an exception to the Telemarketing Rule in Section (a)(2). Thus, while these courts made offhand statements that appear to support Defendant's position at first glance, the whole of their analysis directly conflicts with Defendant's argument.

The overall structure and organization of the TCPA regulations reinforce the Court's interpretation. <u>See</u> <u>United States v. Tupone</u>, 442 F.3d 145, 151 (3d Cir. 2006) (explaining that "the text of a statute must be considered in the larger context or structure of the statute in which it is found"). Notably, two separate sections of the regulations contain wholesale, content-based

exemptions from the Prerecorded Message Prohibition. See 47 C.F.R. § 64.1200(a)(1)(iv)

(codifying an exemption for certain calls made to wireless phones that were recently ported from

wireline service); (a)(9) (codifying narrow exemptions for certain calls made by package

delivery companies, inmate collect call service providers, financial institutions, and healthcare

providers). Thus, if the FCC wanted to exempt all health care messages from the requirements of

the Prerecorded Message Prohibition, it presumably also would have codified that exemption

with these other wholesale exemptions. See Phila & Reading Corp. v. United States, 944 F.2d

1063, 1074 (3d Cir. 1991) (explaining that where a statute or regulation "explicitly enumerates

certain exceptions to a general prohibition, additional exceptions are not to be implied. . . ."

(internal quotation omitted)). But those wholesale exemptions are codified in 47 C.F.R. §

64.1200(a)(1)(iv) and (a)(9) respectively, while, as discussed, the Health Care Message

Exemption is codified in 47 C.F.R. § 64.1200(a)(2).

      Because the Court finds the plain language and structure of the regulations unambiguous,

it is not required to address their history and purpose. See United States v. Gregg, 226 F.3d 253,

257 (3d Cir. 2000) (explaining that only when the text is ambiguous will "a court. . . refer[] to

the legislative history and the atmosphere in which the statute was enacted"). However, the Court

finds the history and purpose of the regulations also support a conclusion that the regulations do

not exempt all health care messages. As to the history, the FCC added Section (a)(2) to the

TCPA regulations in 2013. See Sullivan v. All Web Leads, Inc., No. 17-cv-01307, 2017 WL

2378079, at *2 (N.D. Ill. June 1, 2017) (explaining that Section (a)(2) took effect in 2013).

Before the amendment, Section (a)(1) read as it does today. Loyhayem v. Fraser Fin. &

Insurance Servs., 7 F.4th 1232, 1235 (9th Cir. 2021). At the time the amendment was enacted,

the FCC made clear that Section (a)(2) was intended to add a heightened, written consent

requirement for telemarketing and advertising calls to Section (a)(1)'s general consent

requirement. In re Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991, 27

FCC Rcd. 1830, 1831, 1837, 1841 (2012) [hereinafter 2012 Order].[10] For example, the FCC

stated "[w]hile we review our consent rules to require prior written consent for autodialed or

prerecorded telemarketing calls, we maintain the existing consent rules for non-telemarketing,

informational calls. . . ." Id. at 1841 (emphasis in original). Thus, the 2013 amendment to the

regulations created a "two-tiered system of consent" where prior express consent is required for

non-telemarketing calls and telemarketing calls require written consent. Rotberg v. Jos. A. Bank

Clothiers, Inc., 345 F. Supp. 3d 466, 477 (S.D.N.Y. 2018).

Other aspects of the 2013 amendments also support the conclusion that the regulations

were not intended to wholly exempt all health care messages from Section (a)(1). In fact, the

FCC did exempt some health care calls from the TCPA's consent requirements—but that

exemption only applies to health care calls made to residential lines. See 2012 Order, 27 FCC

Rcd. at 1852–56 ("[W]e exempt from our consent. . . requirements. . . all health care-related calls

to residential lines subject to HIPAA."). The residential lines exemption is inapplicable here

because Plaintiff pleads that Defendant called his wireless phone using a prerecorded voice.

(Compl. ¶¶ 39, 40, 41, 42). And, because the FCC explicitly limited the exemption to residential

lines, the Court infers that it did not intend to exempt health care calls to wireless lines from the

Prerecorded Message Prohibition as well. Phila & Reading Corp., 944 F.2d at 1074.

---

[10] Contemporaneous explanations of agency regulations can be used to determine the agency's intent. See
Jaroslawicz v. M&T Bank Corp., 962 F.3d 701, 711 (3d Cir. 2020) (discussing agency guidance to inform an
interpretation of the ordinary meaning of the agency's regulations); Southeast Alaska Conservation Council v. U.S.
Army Corps. of Eng'rs, 486 F.3d 638, 648 (9th Cir. 2007) ("Courts consider contemporaneous explanations of
regulations, such as those published in the federal register through notice-and-comment rulemaking, in order to
determine the agency's intent.").

Moreover, the Court's interpretation here is consistent with other courts that have considered the TCPA regulations. Indeed, almost all of the other courts to interpret the regulations have concluded that they create a different consent regime for telemarketing calls and non-telemarketing calls. See, e.g., Loyhayem, 7 F.4th at 1235 ("The FCC added paragraph (a)(2) to impose a heightened consent requirement for the subset of robocalls that involve advertising or telemarketing. . . . At the same time, the FCC made clear that it was maintaining the existing consent requirement found in paragraph (a)(1) for all other robocalls made to cell phones." (emphasis in original)); Latner v. Mount Sinai Health Sys., 879 F.3d 52, 54 (2d Cir. 2018) (explaining that the Telemarketing Rule requires prior written consent for telemarketing calls); Sullivan, No. 17-cv-01307, 2017 WL 2378079, a*2 (explaining that the Telemarketing Rule "modified the consent requirements for automated telemarketing calls under the TCPA"); Zani, 246 F. Supp. 3d at 843–44 ("Under the 2013 rules, prerecorded or automated phone calls to a cellular number continued to require prior express consent, as defined in previous FCC orders. In contrast, automated or prerecorded phone calls containing advertisements or telemarketing could be made only with the 'prior express written consent of the called party.'" (emphasis in original) (internal citation omitted) (quoting 47 C.F.R. § 64.1200(a)(2))).

Finally, the Court need not resort to Auer deference or otherwise rely on the FCC's subsequent interpretations of its regulations to support the conclusion here. As Defendant points out, in Kisor v. Wilkie. 139 S. Ct. 2400 (2019), the Supreme Court implored lower courts to exhaust their "legal toolkit" in determining whether a regulation was ambiguous and only defer to the agency when "the interpretive question still has no single right answer." Id. at 2415; see also id. at 2414 ("[T]he possibility of deference can arise only if a regulation is genuinely ambiguous. And when we use that term, we mean it—genuinely ambiguous, even after a court

has resorted to all the standard tools of interpretation."). Here, the Court has employed its tools to determine that the "single right answer" to the interpretive question is that the regulations were not intended to wholly exempt all healthcare messages from the Prerecorded Message Prohibition. See Arcos Sanchez v. Att'y Gen. of the U.S., 997 F.3d 113, 123 n.7 (declining to address an argument that the court should defer to an agency interpretation because the court found the regulations unambiguous using the tools of statutory construction).[11]

In all, the Court finds the TCPA regulations do not exempt all health care messages from the Prerecorded Message Prohibition. Rather, Section (a)(2) of the regulations creates differing consent requirements for telemarketing or advertising calls. For those calls that are not telemarketing or advertising, Section (a)(1) applies.

3.   Applying the Court's Interpretation

Applying its interpretation of the regulations to the Complaint, the Court finds Plaintiff has adequately stated a claim that Defendant called him using a prerecorded voice in violation of the TCPA. As Plaintiff points out, Defendant repeatedly argues that the calls at issue here, including those that used a prerecorded voice, were informational calls rather than telemarketing or advertising calls. (Def. Br. at 7-9). For example, Defendant characterizes the calls as "purely informational," (Def Br. at 7), and "providing health-care information," (Def. Br. at 8). Under the Court's interpretation, non-telemarketing, informational calls are subject to Section (a)(1). That provision requires the express consent of the called party. 47 C.F.R. § 64.1200(a)(1).

---

[11] Nevertheless, the Court notes that the FCC's reading of the regulations to still require express consent for health care messages supports its own interpretation here. See 2014 Order, 29 FCC Rcd. at 15267 n.7; 2015 Order, 30 FCC Rcd. at 8030 n.481.

Plaintiff pleads that he did not provide Defendant with his consent. (Compl. ¶ 49). Thus, Plaintiff's Complaint plausibly states a claim for relief.[12]

Categorizing the four prerecorded calls here as informational is consistent with the Court's holding in Section II.B that Plaintiff plausibly alleged the calls were a pretext to solicitation. Indeed, the foundation of the pretext doctrine is that informational calls, such as the ones here, may still be part of a broader solicitation or advertising scheme. And the Court's reasoning in Section II.B is partially based on the fact that more evidence about the calls is needed to determine whether or not they were pretext. As such, while further development of the record will shed light on the purpose of the calls, it is consistent with the pretext theory to hold that the calls are both informational and, potentially, a pretext to solicitation.

### III.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be granted as to the text messages it sent to Plaintiff but denied as to the rest of the communications. An appropriate Order will be filed together with this Opinion.

      s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: January 11, 2022

---

[12] Because the Court categorizes the prerecorded calls here as non-telemarketing calls, it need not address whether they qualify as health care messages. As discussed above, Section (a)(1) does not distinguish between health care messages and non-health care messages. Compare 47 C.F.R. § 64.1200(a)(1), with 47 C.F.R. § 64.1200(a)(2).